ROCK NADEAU vs. TRUSTEES OF NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY.

Suffolk.    November 10, 1941. — January 28, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Negligence*, Railroad, Violation of rule.   *Railroad*, Company rule, Yard.

In an action for injuries alleged to have been due to negligence of a railroad in the operation of a freight car in one of its yards, certain rules of the railroad requiring specified safety measures should have been excluded as inapplicable to the situation existing when the accident occurred.

A rule of a railroad requiring certain precautions when "cars are being pushed, except when shifting or making up trains in yards," was inapplicable to the process of classifying freight cars in a yard by "kicking" them upon various tracks.

A finding of negligence of a railroad toward an invitee, injured in a freight yard when the ends of timbers which he was helping load upon a truck close to a track were struck by a freight car "kicked" onto the track without anyone on it and without warning to the invitee, was not warranted by evidence not showing that the proximity of the truck and its load to the track was necessary, or that the railroad employees in charge of the car had reason to anticipate the position of the truck or could have observed it, or that there was anything in the situation indicating to them the need of a warning.

TORT.   Writ in the Superior Court dated October 15, 1937.

The action was tried before *Beaudreau*, J., who denied a, motion for a directed verdict for the defendants.   There was a verdict for the plaintiff in the sum of $3,000.   The defendants alleged exceptions.

*N. W. Deering*, for the defendants.

*H. F. Tracy*, for the plaintiff.

QUA, J.   On October 1, 1937, the defendants, as "Trustees of the Property of the New York, New Haven & Hartford Railroad Company," were in control of "Yard 5" and "Pier 4" at South Boston.   "Yard 5" contained a large number of parallel tracks most of which ended at Northern Avenue.   "Pier 4" was on the opposite side of Northern

Avenue. The tracks in the yard were so spaced as to leave between them at intervals driveways twenty-five or more feet in width. The Weyerhaeuser Sales Company, which had an office on "Pier 4," had made some arrangement with the defendants by which when lumber consigned to it was unloaded from a vessel at "Pier 4" it could be conveyed across Northern Avenue and deposited in "Yard 5" in a driveway adjacent to track 47, where it would be loaded upon trucks and removed.

On October 1, at about three o'clock in the afternoon, some heavy timbers, which had been consigned to Weyerhaeuser Sales Company, removed from a vessel at "Pier 4," and conveyed to the driveway, were being loaded upon a truck by means of a crane. The plaintiff, an employee of the truckman, was assisting in loading the truck and was upon the load. Contrary to the usual practice, as the evidence tended to show, the truck had been placed at an acute angle with track 47 in such a position that the ends of long timbers projected from the rear of the truck in close proximity to the nearest rail. A box car (or, according to one witness, two cars joined together), with no engine attached and no one on the car or cars, came along track 47 and struck the projecting ends of the timbers, pushed them forward upon the truck, and caused the plaintiff to be thrown to the ground and injured.

There was evidence that the plaintiff's employer and some one else shouted just before the impact, but we assume that the jury could have found that the plaintiff had no adequate warning of the approaching danger and was in the exercise of due care. We further assume in his favor that the jury could find that he was a business invitee in the railroad yard and not a mere licensee.

As evidence of the defendants' negligence the plaintiff relies upon the alleged breach of two rules of the railroad, neither of which, by its terms, was applicable to the situation disclosed. "Rule 1119," requiring warning, applies "In switching when necessary to move cars that are being loaded or unloaded or when such cars are liable to be struck by other cars." No car was being loaded or unloaded at

the scene of the accident. The operation there going on consisted merely in loading the timbers from the driveway to the truck. "Rule 103," requiring that a trainman take a conspicuous position on the front of the leading car, applies "When cars are being pushed, except when shifting or making up trains in yards." There was no evidence that cars were "being pushed" at the time of the accident, and so far as appears, if the accident happened as the plaintiff contends it did, the defendants' men were engaged in shifting in a yard. It does not seem that this rule was intended to cover the common process of classifying cars in a railroad yard by "kicking" them upon the various tracks. These two rules should have been excluded.

We do not find in the record any substantial evidence of the defendants' negligence. There was no evidence that the depositing of lumber in the driveway and the loading of it upon trucks in any way required the obstruction of tracks even temporarily, or that there had been any obstruction upon any previous occasion. It would seem that there was ample room to deposit lumber in the driveway and to remove it again without encroaching upon the tracks. So far as appears the loading was expected to be performed without interference with the operation of the yard by the railroad for its own purposes. It does not definitely appear where or how far from the scene of the accident the impetus had been given to the car or cars which ran along track 47 and struck the timbers. One of the plaintiff's witnesses testified that the locomotive was "so far up" that he could not see it. It does not appear that the defendants' employees when they caused the car that collided with the timbers to start upon its journey, or when they ceased to exercise control over its movement, were in such positions that they could see that there were timbers projecting from the truck so near the rail that they might be struck. It does not appear that anything either in past experience or observable at the time of the accident rendered it negligent for the defendants' employees to "kick" cars onto track 47 or indicated to them the need of any warning. They could reasonably assume that persons working in a railroad yard

would conduct themselves with due regard to the obvious character of the place and the nature of the activities carried on there.  See *Dyer* v. *Fitchburg Railroad,* 170 Mass. 148; *Jean* v. *Boston & Maine Railroad,* 181 Mass. 197, 198; *Dolphin* v. *New York, New Haven & Hartford Railroad,* 182 Mass. 509, 510.  It is true that there was evidence that there had been no traffic on track 47 since one o'clock that afternoon, and that the defendants' terminal trainmaster testified that the engine was taken out of that yard at about 11 A.M., but there was no evidence of any understanding that there should be no switching in the afternoon, and nothing in this made it negligent for the defendants to use the yard at any time.

Our conclusion is supported, either by decisions or by inference, by a number of cases in this and other jurisdictions.  *Lizotte* v. *New York Central & Hudson River Railroad,* 196 Mass. 519.  *Baglio* v. *Director General of Railroads,* 243 Mass. 203.  *Bardis* v. *Philadelphia & Reading Railway,* 267 Penn. St. 352, 355.  *Buckley* v. *Baltimore & Ohio Railroad,* 275 Penn. St. 360.  *McCabe* v. *Minneapolis & St. Louis Railway,* 188 Iowa, 642, 646.  *Aerkfetz* v. *Humphreys,* 145 U. S. 418.  Compare *Dixon* v. *New York, New Haven & Hartford Railroad,* 207 Mass. 126.  The case differs from cases where the plaintiff had a right to rely to some extent upon an established practice to warn persons in his position of the approach of cars.  *Meadowcroft* v. *New York, New Haven & Hartford Railroad,* 193 Mass. 249.

Because there was no evidence of the defendants' negligence their motion for a directed verdict in their favor should have been granted.

*Exceptions sustained.*
*Judgment for the defendants.*